UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JOSHUA MOUNTS,  )<br>   )<br>Plaintiff,  )<br>   )<br>v.  )<br>   )<br>NANCY A. BERRYHILL, Acting  )<br>Commissioner of Social Security,  )<br>   )<br>Defendant.  )  | No. 6:18-CV-261-REW<br><br>OPINION & ORDER |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Joshua Mounts appeals the Commissioner's denial of his application for Supplemental Security Income (SSI) benefits. The parties filed dueling summary judgment motions. The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE 11) and **DENIES** Mounts's motion (DE 9) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Mounts is currently 45 years old. *See, e.g.*, R. at 31. He alleges disability beginning on December 2, 2006. *See* R. at 174. Mounts previously applied, then alleging an August 1, 2007, onset date, for DIB (under Title II) and SSI (under Title XVI) benefits in January 2013. R. at 43. After initial and reconsideration denials, Administrative Law Judge (ALJ) Gloria York held a hearing in September 2014. *Id.* ALJ York denied Mounts's claims on November 5, 2014. R. at 54–55. Mounts sought no further review. R. at 12.

Mounts reapplied for (only SSI) benefits in March 2016. R. at 174. The SSA denied his claim initially on June 17, 2016, *see* R. at 99–102, and upon reconsideration on September 28,

1

2016. *See* R. at 106–07. Following Mounts's November 2016, request, *see* R. at 120, ALJ Tommye Mangus held a hearing on October 13, 2017. R. at 29–39. At the hearing, attorney Patrick House represented Mounts. *See* R. at 29. Claimant and impartial vocational expert Bill Ellis testified. R. at 31–38. ALJ Mangus subsequently denied Mounts's claim on February 12, 2018. R. at 11–21. The Appeals Council denied review, and thus upheld the ALJ's decision, on August 16, 2018. R. at 1–3.

The ALJ made several particular findings in the required sequence. She determined that Mounts had not engaged in substantial gainful activity since his March 30, 2016, application. R. at 14. The ALJ next determined that Mounts had several severe impairments. *Id.* However, ALJ Mangus then found that Mounts did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at 14–16. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 16–20. Although ALJ Mangus found that Mounts had "no past relevant work," the ALJ determined that, given Mounts's particular characteristics and RFC, "there are jobs that exist in significant numbers in the national economy that [Mounts] can perform[.]" R. at 20–21. Based on these considerations, the ALJ ruled that Mounts was not under a disability from March 25, 2016, through the date of decision. *See* R. at 12, 21. Dissatisfied with the result of the SSA's subsequent administrative process, which denied him relief, Mounts turned to federal court for review.

## II. ANALYSIS

### A. Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the administrative record. The Court has turned every apt[1] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE 6 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Acting Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must

---

[1] That is, those records relevant to the particular issues Mounts presents for review.

affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).[2] At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Acting Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at §

---

[2] The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

B.  <u>The ALJ did not reversibly err.</u>

Mounts makes two arguments: that ALJ Mangus erroneously revised ALJ York's earlier mental RFC finding, DE 9 at 6–10, and that Judge Mangus erred in declining to reopen Mounts's January 14, 2013, applications for benefits, *id.* at 10–11. The Court evaluates each in turn.

*RFC Revision*

In 2014, ALJ York, as to limitations springing from Plaintiff's mental impairments,[3] found Mounts "limited to routine, repetitive tasks which require only occasional interaction with supervisors and coworkers and no interaction with the general public in a job which is **not fast**

---

[3] ALJ York's impairment findings substantially tracked ALJ Mangus's conclusion that Mounts "has the following severe impairments: Degenerative disc disease of the cervical and lumbar spine, depression, personality disorder, [and] history of marijuana and alcohol abuse in remission." R. at 14; *see* R. at 47.

5

**paced** and **has low production quotas**." R. at 49.[4] ALJ Mangus, however, found that the "current evidence suggests that the claimant has only mild issues with concentration or attention[.]" R. at 19. Accordingly, ALJ Mangus found that Mounts, "mentally, [ ] can only perform **simple**, routine, repetitive tasks in a non-public work environment that requires only occasional interaction with coworkers and supervisors, and in which **changes occur no more than occasionally**." R. at 16. [The Court bolds the portions of the respective RFCs relevant to Mounts's argument.]

The parties first dispute the standard applicable to such RFC revisions. Mounts, relying on *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), contends that ALJ York's RFC determination was binding on ALJ Mangus in the absence of new evidence or changed circumstances. *See* DE 9 at 6. The Commissioner, pointing to *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018), argues that Mounts relies on "abrogated case law." DE 11 at 6. However, *Earley* was not an *en banc* decision and that panel did not suggest that *Drummond* was somehow inconsistent with intervening Supreme Court precedent. Thus, *Earley* did not= "abrogate" *Drummond*. *See United States v. White*, 768 F. App'x 428, 429 (6th Cir. 2019) ("[A] panel of this court cannot overrule a prior, published decision of another panel 'unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.' *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); *see also* 6 Cir. R. 32.1(b) (stating that published panel opinions are binding on all subsequent panels).").

---

[4] Mounts claims that the VE testified, in response to an "additional hypothetical based strictly" on ALJ York's RFC finding, that such limitations "would eliminate all jobs." DE 9 at 5. This representation is inaccurate. The record shows that Plaintiff posed only one hypothetical that incorporated all of ALJ *Mangus*'s RFC limits, R. at 38 (incorporating ALJ Mangus's "first hypothetical"), and *greater* limitations than ALJ York ever found. *See id.* (adding a limitation that the hypothetical individual could not "have **any** quota requirements") (emphasis added).

Nonetheless: How to reconcile *Earley* and *Drummond*? One possibility is to read *Earley* as construing portions of *Drummond* as dicta. "Although there are many techniques for determining the difference between binding precedent and non-binding dicta, one approach is to ask whether the questionable language is essential to the holding's reasoning." *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 836 (6th Cir. 2019) (citing *Tyler v. Cain*, 121 S. Ct. 2478, 2482 n.4 (2001)). Portions of *Earley* suggest this type of analytical sifting:

> Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect **outcome**.
> . . . .
> All of this helps to explain why *Drummond* referred to "principles of res judicata"—with an accent on the word "principles." 126 F.3d at 841–43. What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. *Id.* at 842; *see Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999). That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

893 F.3d at 933 (emphasis added). *Earley* indicates that the crucial problem in *Drummond* was that "[n]othing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age." *Earley*, 893 F.3d at 932. Perhaps then, *Drummond*'s unswerving declaration that, absent proof of changed circumstances, a "second ALJ [is] bound by" prior ALJ findings ALJ, 126 F.3d at 843, "can be conceptually removed from the decision without affecting the outcome." *Logan*, 939 F.3d at 836. Thus, per *Earley*, *Drummond* is "best understood as a practical illustration of the substantial evidence rule in which the prior factual finding was such an important and probative fact as to

7

render the subsequent finding to the contrary unsupported by substantial evidence." *Earley*, 893 F.3d at 933 (citation and quotation marks omitted).[5]

Alternatively, maybe *Earley* simply clarified the scope of *Drummond*'s "changed circumstances" predicate for departing from a prior determination. *Drummond*, 126 F.3d at 843.[6] On this reading, *Earley* remains faithful to, but defines the limits of *Drummond*'s foundational call to "**principles** of res judicata[.]" *Id.* (emphasis added). For instance, the later panel recognized that an individual "that has not reached any new age (or other) threshold to obtain benefits" filing a successive application, absent (or with "very little") new evidence, properly has little chance of success. *Earley*, 893 F.3d at 933. In that scenario, the second ALJ may legitimately consider the prior findings, and "[w]hat's past likely will be precedent[.]" *Id.* at 933–34. On the other hand, unless an applicant applies for benefits for "the same period covered by" a prior application, res judicata, itself, logically does not apply. *Earley*, 893 F.3d at 933. And, given that "human health is rarely static[,]" issue preclusion would apply only "rarely . . . in this setting." *Id.* Thus, *Earley* indicates that in a mine-run case, which *Drummond* was not, mere passage of time could result in 'changed circumstances' sufficient to overcome any *Drummond*-based presumption. *See id.*

---

[5] There is language in *Drummond* to support this view. *See, e.g.*, 126 F.3d at 843 (finding that "**substantial evidence** was not introduced that Drummond's condition improved significantly between the two hearing dates" (emphasis added)).

[6] Judge Wilhoit recently interpreted *Earley* in this way:
> *Drummond* spawned an era of confusion, the tangled case law and turgid Latin of which need not be dwelled upon here as the Sixth Circuit recently clarified *Drummond*. The Court held that *Drummond* was never intended to preclude an ALJ "from giving a fresh look to a new application containing new evidence . . . that covers a new period of alleged disability" or "from revisiting [an] earlier finding . . . unless [the claimant] offered new and material evidence of a changed condition."

*Warren v. Saul*, No.18-CV-225-HRW, 2019 WL 3253964, at *2 (E.D. Ky. July 19, 2019) (quoting *Earley*, 893 F.3d at 931) (alterations in original).

For present purposes, the Court need not affirmatively decide whether *Earley* deems *Drummond*'s presumption mere dicta or clarifies that the "changed circumstances" necessary for rebuttal are minimal. Under either reading, *Drummond* is inapplicable here. ALJ Mangus confronted an application filed more than 3 years after Mounts's first filing. The 2018 record includes literally hundreds of pages of Mounts records that post-date ALJ York's November 5, 2014, RFC determination. *See, e.g.*, R. at 192–273, 288–330, 423–601. Further, and consistent with *Earley* (and that panel's *Drummond* interpretation), ALJ Mangus thoughtfully considered, before partly departing from, ALJ York's RFC findings. *See* R. at 19; *see also* R. at 15–16.[7]

In *Drummond*:

> The first and second ALJs reviewed the same medical evidence—except for a single additional report indicating that the plaintiff's "condition actually worsened" since the decision on the plaintiff's first application. *Drummond*, 126 F.3d at 843. Because the plaintiff's medical circumstances had not changed, the Commissioner was bound by the previous finding that the plaintiff could only perform sedentary work. *Id.* Therefore, the second determination that the plaintiff could perform medium work was "not supported by substantial evidence." *Id.*

*Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 861 (6th Cir. 2018). Mounts's case is clearly distinct from Drummond's:

> Whereas the ALJs in *Drummond* reached different conclusions about the plaintiff's RFC based on nearly identical evidence, in this case the [ ] second [ALJ's] decision relied on an extensive body of evidence collected after the decision denying Plaintiff's first application.

---

[7] Unsurprisingly, Plaintiff does not take issue with ALJ Mangus's finding, at step 3, of **greater** limitations, vis-à-vis Judge York's findings, in Mounts's ability to "interact[ ] with others[.]" *Compare* R. at 15 ("moderate" limitation), *with* R. at 48 ("mild" limitation); *see also* 20 C.F.R. § 416.920(a) (SSA rates the degree of limitation in the functional areas on "the following five point scale: None, mild, moderate, marked, and extreme."); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2) (A "[m]ild limitation" means "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." A "[m]oderate limitation" means "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.").

9

*Amburgey*, 751 F. App'x at 861–62.[8] ALJ Mangus gave "significant weight" to the consultative examination opinion of Dr. Timothy Baggs. R. at 19.[9] Dr. Baggs's 2016 opinion was, of course, not available to ALJ York when she formulated Mounts's RFC in 2014. Dr. Baggs opined that Mounts had no more than a "mild deficiency in his ability to maintain sustained concentration and persistence in the completion of tasks in a normal amount of time." R. at 300. That opinion—new information before Judge Mangus specifically arising in the unadjudicated period—directly contradicts ALJ York's prior finding that Mounts had a "moderate limitation on his ability to maintain concentration, persistence, and pace." R. at 48. ALJ Mangus chose to lean on the more recent examination-based opinion of a doctor, trained in the relevant field, rather than blindly

---

[8] ALJ Mangus considered Mounts's application for a period distinct from ALJ York's review. Mounts's application filing date set an initial temporal boundary for his SSI eligibility and available benefits. *See* 20 C.F.R. § 416.305 ("In addition to meeting other requirements, you must file an application to become eligible to receive benefits."); 20 C.F.R. § 416.335 ("[T]he earliest month for which we can pay you benefits is the month following the month you filed the application."). Thus, the ALJ assessed the full period but evaluated precisely disability after March 25, 2016. R. at 12 & 21. Because Mounts sought "benefits for a distinct period of time," that new "application [was] entitled to review." *Earley*, 893 F.3d at 933. ALJ Mangus gave Mounts just that.

[9] Mounts does not challenge the ALJ's reliance, generally or as to degree, on Dr. Baggs's thorough opinion. Dr. Baggs's examination was, on this record, the most recent doctoral analysis of Mounts's mental state.

adhere to an aged contradictory finding of her administrative predecessor. That choice, on this record and under the applicable standard, was not error.[10]

Given the framing of Mounts's first argument, the Court could justifiably halt its analysis of that topic here. *See* DE 9 at 1 (identifying, as the overarching concern of the first ground, "[w]hether the ALJ improperly revised the Plaintiff's" RFC). His related claims under that heading fail if substantial evidence supports ALJ Mangus's RFC departure and ultimate finding. *See Dugan v. Comm'r of Soc. Sec.*, 742 F. App'x 897, 902 (6th Cir. 2018). Dr. Baggs's unchallenged opinion supplies just that. Nonetheless, the Court, for completeness, addresses Mounts's remaining attempts to undercut the ALJ's RFC analysis.

Plaintiff contends that two state agency psychological consultants' verbatim adoption of ALJ York's RFC finding detracts, in some undefined way, from ALJ Mangus's RFC finding (or the choice to vary from ALJ York's formulation). DE 9 at 7 (citing opinions of Drs. Stodola and Thompson). The Court is unpersuaded. First, the argument ignores the applicable standard. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers

---

[10] Mounts also quibbles with ALJ Mangus's alternative justification for the departure. *See* DE 9 at 9. ALJ Mangus noted that ALJ York used certain terms—"fast paced" and "low production quotas"—in crafting Mounts's first RFC that were "not defined in the Dictionary of Occupational Titles." R. at 19. Thus, the ALJ modified Mounts's RFC both "to better reflect the claimant's mental limitations[,]" and to "use terms that are defined in the Dictionary of Occupational Titles" (DOT). *Id.* Mounts suggests that this additional ground for departure is unfounded and argues that the substitute language is, relative to the prior formulation, "overly broad and highly ambiguous[.]" DE 9 at 9. Because the Court finds that substantial evidence supports the ALJ's primary basis for modifying RFC finding, this theory warrants little discussion. Nonetheless, and to the extent Mounts intended his argument on this topic as something more than a continuation of the *Drummond* theory, the Court notes as follows. First, at step 4, Mounts had the burden. *See Preslar*, 14 F.3d at 1110. Second, Plaintiff points to no authority suggesting that consistency with the DOT is an improper consideration for RFC formulation. Third, at bottom, the Court fails to see (and Plaintiff does not explain) how the ALJ's adoption of, per Mounts, "**broad[er]**" limitations on Plaintiff's capacity suggest erroneous application of legal standards or an absence of substantial evidence. Mounts, thus, warrants no relief on this theory.

11

to that finding '**even if there is substantial evidence in the record that would have supported an opposite conclusion.**'") (emphasis added & citation omitted). Second, Mounts does not challenge and offers no specific argument concerning the ALJ's reasoning in assigning only "some weight" to the subject opinions. R. at 20. Third, as explained, Dr. Baggs's opinion, carrying an unchallenged "significant weight" assignment, substantially justifies Judge Mangus declining a wholesale adoption of the York-crafted RFC.

Next, Plaintiff contends that ALJ Mangus ignored "the effects of pain caused by Plaintiff's severe physical impairments in conjunction with its accompanying effects on Plaintiff's mental abilities." DE 9 at 8. Mounts, as direct[11] support for such compounding effects, cites only Dr. Baggs's statement that "claimant's alleged physical problems seem to be impinging on his reduced psychological functioning." *Id.* at 8 n.11 (citing R. at 300). Of course, Dr. Baggs, acknowledging and accounting for the physical/mental interplay, went on to find that Mounts had only "mild" concentration issues. R. at 300. Again, ALJ Mangus gave "substantial weight" to Dr. Baggs's view (an assignment unchallenged here), which included direct consideration of the physical/mental crossover issue that Mounts claims went ignored. Plaintiff's argument is, thus, factually baseless.

Further, Plaintiff, at the hearing, did not claim that pain compounded or exacerbated any of his mental health issues. *See* R. at 31–36. Indeed, in response to the ALJ's prompting to "tell

---

[11] Mounts also points to proof of degenerative disc disease. *See* DE 9 at n. 12. However, evidence of physical maladies is not itself evidence of a conjunctive impact on mental functioning. Such proof is what Mounts, evidently, claims the ALJ ignored. To the extent Mounts is obliquely claiming that the ALJ wholly ignored his pain claims, the record belies the contention. ALJ Mangus explicitly discussed Mounts's pain complaints and defensibly rejected "the extreme limitations the claimant has alleged." R. at 19. Judge Mangus noted that Mounts's pain treatment "has been very conservative" and, per the records, amenable to treatment. *See* R. at 18; *see also* R. at 34 (describing medication), 316 (describing pain as "3-6 on a pain scale of 1-10" and "[a]lleviated by rest" and non-steroidal anti-inflammatory drugs), 570 (steroid injections "provided about 30% relief"). Plaintiff may disagree with the weight ultimately assigned his pain contentions, but the ALJ did not in any sense ignore Mounts's pain.

me what kind of problems you're having that caused you to file this application," starting with "what you consider to be your worst problem[,]" Mounts did not mention a single mental health issue. R. at 33–35. Later, and only in response to counsel's direct query on the mental health topic, Mounts testified, in full, that he had "depression and anxiety" that led him to "cry a lot" and not "talk much[.]" R. at 36.

In this lengthy record, Plaintiff identifies only a single statement as evidence of Mounts's pain compounding or worsening his mental health limitations. Contrary to Plaintiff's contention, ALJ Mangus did not "ignore" such proof, but rather gave foundational weight to the opinion of Dr. Baggs, the author of the subject statement, in fashioning Mounts's RFC. Thus, Mounts's pain claim does not further his *Drummond* theory or otherwise suggest that ALJ Mangus erred.

In sum, ALJ Mangus, reviewing a significantly expanded record more than three years[12] after Judge York's finding, "appropriately considered administrative *res judicata* and had

---

[12] The passage of these years was meaningful for Mounts's mental health record. Relative to ALJ York's review, ALJ Mangus considered a claimant 36+ additional months removed from his last, 2007-08, hospitalization for mental health issues, *see* R. at 16, with a lengthier history of no more than modest mental health treatment (and no evidence of prescription-based treatment). *See id.* The Court finds the temporal distance from Mounts's last commitment, on this record, more relevant to the existence of changed circumstances. *See Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018) (recognizing "that ALJs must be careful not to assume that a claimant's failure to receive mental-health treatment evidences a tranquil mental state, for the claimant's failure to seek treatment may be another symptom of a disorder itself") (citation, quotation marks, and alterations omitted); R. at 312 (Cumberland River Comp. Care treatment notes indicating that lack of cooperation in treatment "maybe due to a personality disorder."). However, "there is no evidence that explains [Mounts's] lack of [prescription] treatment for [nearly ten] years[.]" *Kestel*, 756 F. App'x at 599. Thus, Plaintiff's inconsistent or non-existent treatment in the years following ALJ York's review provides some additional evidence that Mounts's "mental health symptoms may not have been as limiting as" the prior RFC suggested. *Id.*; *see also* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of . . . symptoms are inconsistent with the overall evidence of record."); *see also* R. at 312 (Bishop treatment notes remarking that Mounts "did not appear to be genuine overall").

substantial evidence to support her finding" of changed circumstances, one she made with precision. *Dugan*, 742 F. App'x at 902. Thus, *Drummond* is inapposite, and the Court entirely rejects Mounts's first theory.

*Reopening Denial*

Plaintiff's final challenge, to the ALJ's denial of an implied request to reopen Mounts's 2013 application, is not here cognizable. For SSA decisions, § 405(g) sets the boundaries for judicial review:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). In *Califano v. Sanders*, 97 S. Ct. 980 (1977), the Supreme Court "held that § 205(g) of the Social Security Act[, codified at § 405(g),] does not authorize judicial review of the Secretary's decision not to reopen a previously adjudicated claim for benefits." *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 119 S. Ct. 930, 934 (1999). The *Califano* Court concluded that a denial of reopening does not qualify as a final decision under § 405(g), "reasoning that a petition to reopen was a matter of agency grace that could be denied without a hearing altogether and that allowing judicial review would thwart Congress' own deadline for seeking such review." *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019) (citing *Califano*, 97 S. Ct. at 985–86). Thus, even when, as here, "the SSA's denial of the petition to reopen (1) was conclusive and (2) postdated and ALJ hearing" the § 405(g) "'after a hearing' requirement" cannot be satisfied "as a matter of mere chronology." *Id.* Accordingly, and because Mounts "has not raised any [ ] constitutional claim" the Court lacks "jurisdiction to review the . . . refusal to reopen[.]" *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 463 (6th Cir. 2013) (citing *Califano*, 97 S. Ct. at 985–86).

### III. CONCLUSION

For the reasons stated, the Court **GRANTS** DE 11 and **DENIES** DE 9. The Court will enter a separate Judgment.

This the 2nd day of January, 2020.

Signed By:
*Robert E. Wier*　REW
United States District Judge